*Attorney Grievance Commission of Maryland v. Willie James Mahone*, Miscellaneous Docket AG No. 82, September Term, 2015

**ATTORNEY DISCIPLINE — SANCTIONS — INDEFINITE SUSPENSION —** Respondent Willie James Mahone violated the Maryland Lawyers' Rules of Professional Conduct ("MLRPC"), Maryland Rules regarding attorney trust accounts, and Maryland Code (1957, 2010 Repl. Vol.), § 10-306 of the Business Occupations and Professions Article ("BP") when he failed to maintain records accurately reflecting the status of his attorney trust account. Furthermore, Respondent commingled personal funds and client funds within the account, withdrew cash from his trust account, and created negative balances in multiple client accounts.

On February 12, 2014, Sandy Spring Bank notified the Attorney Grievance Commission of Maryland ("AGC") that Respondent's attorney trust account was overdrawn by $86.48. When the AGC investigated the matter, it found that Respondent could not produce records of his trust account activity. In addition, Respondent failed to timely and completely respond to Bar Counsel's requests for information. Respondent violated (1) MLRPC 1.1 (Competence); (2) MLRPC 8.1(b) (Bar Admission and Disciplinary Matters); (3) MLRPC 8.4(a) and (d) (Misconduct); (4) Maryland Rule 16.606.1 (Attorney Trust Account Record-Keeping); (5) Maryland Rule 16-607 (Commingling of Funds); (6) Maryland Rule 16-609 (Prohibited Transactions); and (7) BP § 10-306 (Misuse of Trust Money) when he mismanaged his attorney trust account and failed to fully comply with the AGC's disciplinary investigation. Taken together, these violations warrant indefinite suspension.

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 82

September Term, 2015

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

WILLIE JAMES MAHONE

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

Opinion by Adkins, J.
McDonald and Watts, JJ., concur and dissent.

Filed: December 19, 2016

On February 29, 2016, the Attorney Grievance Commission of Maryland ("AGC"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action against Respondent Willie James Mahone. Bar Counsel charged Mahone with violating the Maryland Lawyers' Rules of Professional Conduct ("MLRPC"), Maryland Rules governing attorney trust accounts, and a statutory provision regarding misuse of trust money.[1] Specifically, Bar Counsel alleged that Mahone violated the following provisions: (1) MLRPC 1.1 (Competence);[2] (2) MLRPC 1.4 (Communication);[3] (3)

---

[1] Effective July 1, 2016, the Maryland Rules were revised. The MLRPC were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and renumbered. Rules Order (June 6, 2016). The revised rules are now numbered as follows: MARPC 19-301.1 (Competence); MARPC 19-301.4 (Communication); MARPC 19-301.15 (Safekeeping Property); MARPC 19-308.1 (Bar Admission and Disciplinary Matters); and MARPC 19-308.4 (Misconduct). The Maryland Rules regarding attorney trust accounts were also renumbered. The revised rules are now numbered as follows: Rule 19-407 (Attorney Trust Account Record-Keeping); Rule 19-408 (Commingling of Funds); and Rule 19-410 (Prohibited Transactions). We will refer to the MLRPC and the previous numbering of the Maryland Rules regarding attorney trust accounts because the misconduct at issue occurred before these changes.

[2] **Rule 1.1. Competence.**
    A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

[3] **Rule 1.4. Communication.**
(a) A lawyer shall:
    (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
    (2) keep the client reasonably informed about the status of the matter;

(continued . . .)

MLRPC 1.15(a), (c), and (d) (Safekeeping Property);[4] (4) MLRPC 8.1(b) (Bar

Admission and Disciplinary Matters);[5] (3) MLRPC 8.4(a), (c), and (d) (Misconduct);[6] (4)

---

   (3) promptly comply with reasonable requests for information; and

   (4) consult with the client about any relevant limitation on the attorney's conduct when the attorney knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[4] **Rule 1.15. Safekeeping Property.**

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

          \*\*\*

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled

(continued . . .)

Maryland Rule 16.606.1 (Attorney Trust Account Record-Keeping);[7] (5) Maryland Rule 16-607 (Commingling of Funds);[8] (6) Maryland Rule 16-609 (Prohibited Transactions);[9]

---

to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

[5] **Rule 8.1. Bar Admission and Disciplinary Matters.**

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

\*\*\*

(b)  fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

[6] **Rule 8.4. Misconduct.**

It is professional misconduct for a lawyer to:

(a)  violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\*\*\*

(c)  engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d)  engage in conduct that is prejudicial to the administration of justice[.]

[7] **Rule 16-606.1. Attorney trust account record-keeping.**

(a)  **Creation of records.** The following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons:

(1)  Attorney trust account identification. An identification of all attorney trust accounts maintained, including the name of the financial institution, account number, account name, date the account was opened, date the account was closed, and an agreement with the financial

(continued . . .)

3

institution establishing each account and its interest-bearing nature.

(2) Deposits and disbursements. A record for each account that chronologically shows all deposits and disbursements, as follows:

(A) for each deposit, a record made at or near the time of the deposit that shows (i) the date of the deposit, (ii) the amount, (iii) the identity of the client or third person for whom the funds were deposited, and (iv) the purpose of the deposit;

(B) for each disbursement, including a disbursement made by electronic transfer, a record made at or near the time of disbursement that shows (i) the date of the disbursement, (ii) the amount, (iii) the payee, (iv) the identity of the client or third person for whom the disbursement was made (if not the payee), and (v) the purpose of the disbursement;

(C) for each disbursement made by electronic transfer, a written memorandum authorizing the transaction and identifying the attorney responsible for the transaction.

(3) Client matter records. A record for each client matter in which the attorney receives funds in trust, as follows:

(A) for each attorney trust account transaction, a record that shows (i) the date of the deposit or disbursement; (ii) the amount of the deposit or disbursement; (iii) the purpose for which the funds are intended; (iv) for a disbursement, the payee and the check number or other payment identification; and (v) the balance of funds remaining in the account in connection with the matter; and

(B) an identification of the person to whom the unused portion of a fee or expense deposit is to be returned whenever it is to be returned to a person other than the client.

(continued . . .)

4

(4) Record of funds of the attorney. A record that identifies the funds of the attorney held in each attorney trust account as permitted by Rule 16-607 b.

(b) **Monthly reconciliation.** An attorney shall cause to be created a monthly reconciliation of all attorney trust account records, client matter records, records of funds of the attorney held in an attorney trust account as permitted by Rule 16-607 b, and the adjusted month-end financial institution statement balance. The adjusted month-end financial institution statement balance is computed by adding subsequent deposits to and subtracting subsequent disbursements from the financial institution's month-end statement balance.

(c) **Electronic records.** Whenever the records required by this Rule are created or maintained using electronic means, there must be an ability to print a paper copy of the records upon a reasonable request to do so.

(d) **Records to be maintained.** Financial institution month-end statements, any canceled checks or copies of canceled checks provided with a financial institution month-end statement, duplicate deposit slips or deposit receipts generated by the financial institution, and records created in accordance with section (a) of this Rule shall be maintained for a period of at least five years after the date the record was created.

[8] **Rule 16-607. Commingling of funds.**

a. **General prohibition.** An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16-604 or permitted to be so deposited by section b. of this Rule.

b. **Exceptions.** 1. An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges, or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 16-610 b 1 (D), or (B) enter into an agreement with the financial institution to have any fees or charges deducted from an operating account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds

(continued . . .)

and (7) Maryland Code (1957, 2010 Repl. Vol.), § 10-306 of the Business Occupations

and Professions Article ("BP") (Misuse of Trust Money).[10]

---

expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.

2. An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.

3. Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with the funds held for other clients or beneficial owners.

[9] **Rule 16-609. Prohibited transactions.**

a. **Generally.** An attorney or law firm may not borrow or pledge any funds required by the Rules in this Chapter to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose.

b. **No cash disbursements.** An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer, and no cash withdrawal may be made from an automated teller machine or by any other method. All disbursements from an attorney trust account shall be made by check or electronic transfer.

c. **Negative balance prohibited.** No funds from an attorney trust account shall be disbursed if the disbursement would create a negative balance with regard to an individual client matter or all client matters in the aggregate.

[10] **Business Occupations and Professions Article § 10-306. Misuse of trust money.**

A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

We transmitted the matter to the Circuit Court for Montgomery County and designated the Honorable Cynthia Callahan ("the hearing judge") to conduct an evidentiary hearing. Following a one-day hearing, the hearing judge issued Findings of Fact and Conclusions of Law, in which she found by clear and convincing evidence that Mahone violated MLRPC 1.1, MLRPC 8.1(b), MLRPC 8.4(a), (c), and (d); Maryland Rules 16.606.1, 16-607, 16-609; and BP § 10-306.

### THE HEARING JUDGE'S FINDINGS OF FACT

Mahone was admitted to the Maryland Bar in May 1980. The AGC's investigation of Mahone was triggered when Sandy Spring Bank notified the AGC that an overdraft of his attorney trust account had occurred. The hearing judge made the following findings of fact by clear and convincing evidence:

In February 2014, an overdraft in the amount of $86.48 occurred in Mahone's attorney trust account. On March 10, 2014, Bar Counsel sent Mahone a letter requesting an explanation of the overdraft and client ledgers, monthly bank statements, deposit slips, and canceled checks from November 2013 to March 2014. The letter requested a response within 10 days. Mahone responded on March 31, 2014, but did not provide the requested client ledgers or deposit slips. His response was also 10 days late.

Bar Counsel sent Mahone follow-up letters requesting the client ledgers and deposit slips on April 10, 2014, November 18, 2014, and December 10, 2014. Despite these repeated requests, Mahone never responded.

Due to Mahone's failure to provide the requested information, Bar Counsel subpoenaed Sandy Spring Bank for Mahone's attorney trust account records for November 2013 to December 2014. A forensic investigator for the AGC, Charles E. Miller, IV, analyzed Mahone's attorney trust account records. Miller created a transaction summary and client ledger summary from these records, which indicated: (1) negative balances in nine client trust accounts; (2) earned attorney's fees deposited into nine client trust accounts; (3) remaining balances in five client trust accounts; (4) 11 electronic transfers, including several checks Mahone made out to himself; and (5) a $1,500 cash withdrawal.

On April 9, 2015, Bar Counsel provided Mahone with Miller's summaries and requested additional information related to the transactions in the summaries by April 24, 2015. Although Mahone was granted a 14-day extension, Bar Counsel did not receive a response. Bar Counsel then requested a response by May 18, 2015. Mahone responded by letter on May 20, 2015, stating that he would provide the requested information by June 1, 2015. Mahone finally responded to Bar Counsel's request on August 16, 2015, but failed to provide a satisfactory explanation or any of the requested supporting documentation. Mahone later sent Bar Counsel a supplemental response, but none of the information he provided addressed Bar Counsel's requests.

On June 23, 2016, Bar Counsel deposed Mahone. During his deposition, Mahone admitted that he failed to create and maintain proper records, failed to create records associated with electronic transactions, and commingled funds. Mahone also answered questions related to four transactions in Miller's summaries. Miller updated

8

his summaries to reflect this new information, and the summaries were received into evidence. The summaries demonstrated the following by clear and convincing evidence:

1. Mahone caused negative balances in the following client matters:

| 06/25/2014 | Acoota | -$800.00 |
|---|---|---|
| 12/01/2014 | Harrison | -$525.00 |
| 10/08/2014 | Juarez | -$1,472.00 |
| 10/16/2014 | Leppo | -$1,365.00 |
| 06/16/2014 | Mahmood | -$516.00 |
| 08/29/2014 | Mahmood | -$2,035.20 |
| 12/17/2014 | Patty | -$2,000.00 |
| 09/25/2014 | Rice | -$1,575.11 |
| 02/12/2014 | Unknown | -$86.48 |

2. Mahone deposited earned attorney's fees into his attorney trust account in the following matters:

| 11/16/2014 | Anzures | $238.75 |
|---|---|---|
| 11/04/2014 | Branson | $125.00 |
| 11/04/2014 | Fletcher | $125.00 |
| 11/16/2013 | Goldberg | $300.00 |
| 09/10/2014 | Knill | $125.00 |
| 09/10/2014 | Lopez | $350.00 |
| 11/04/2014 | Marks | $125.00 |
| 12/04/2014 | Marks | $625.00 |
| 11/08/2013 | Smith-Jasper | $260.00 |

3. Mahone improperly maintained funds in his attorney trust account belonging to clients, third parties, and sometimes himself in the following matters:

| 04/02/2014 | Duckett | $27.31 |
|---|---|---|
| 08/06/2014 | Hickman | $600.00 |
| 01/27/2014 | Hopkins | $200.00 |
| 08/11/2014 | Salahudding | $537.00 |
| 08/19/2014 | Yamada | $1,628.00 |

9

4. Mahone failed to maintain records associated with the following electronic funds transfers from his attorney trust account:

| 01/29/2014 | Unknown | -$1,000.00 |
| 10/02/2014 | Unknown | -$2,000.00 |

5. Mahone failed to maintain any records associated with the following transactions and cannot identify whose money was withdrawn from the attorney trust account:

| 09/09/2014 | Hopehill United Methodist Church | -$100.00 |
| 10/02/2014 | Check to Mahone | -$2,000.00 |
| 11/29/2013 | Check to Mahone | -$800.00 |
| 12/30/2013 | Check to Mahone | -$900.00 |
| 02/12/2014 | Cash Deposit | $125.00 |
| 02/18/2014 | Cash Deposit | $100.00 |
| 04/25/2014 | Cash Deposit | $1,500.00 |
| 11/19/2014 | Check to Mahone | -$500.00 |
| 11/25/2014 | Check to Mahone | -$865.00 |

6. On September 9, 2014, Mahone made a $100 personal donation to his church from his attorney trust account.

**THE HEARING JUDGE'S CONCLUSIONS OF LAW**

From these facts, the hearing judge concluded that Mahone violated MLRPC 1.1, 8.1(b), and 8.4(a), (c), and (d). The hearing judge also found that Mahone violated Maryland Rules 16-606.1, 16-607, and 16-609, and BP § 10-306.[11]

**MLRPC 1.1: Competence**

MLRPC 1.1 requires attorneys to represent their clients with the necessary legal knowledge, skill, thoroughness, and preparation. The hearing judge found that Mahone violated MLRPC 1.1 when "he failed to competently handle client and third party funds deposited into his trust account." In addition, the hearing judge found that Mahone violated MLRPC 1.1 when "he failed to create and maintain records of the deposits and withdrawals of client and third party funds."

**MLRPC 8.1: Bar Admission and Disciplinary Matters**

MLRPC 8.1 imposes an obligation on Maryland attorneys to fully cooperate with disciplinary investigations. The hearing judge found that Mahone violated MLRPC 8.1(b) by failing to timely and completely respond to Bar Counsel's letters requesting additional information on March 10, 2014, April 10, 2014, and November 18, 2014.

**MLRPC 8.4: Misconduct**

MLRPC 8.4 defines professional misconduct for attorneys. The hearing judge found that Mahone violated MLRPC 8.4(a), (c), and (d). He violated MLRPC 8.4(a) by breaching other rules of professional conduct. Mahone violated 8.4(c) "when he created

---

[11] The hearing judge did not find a violation of MLRPC 1.4 or 1.15. The Findings of Fact and Conclusions of Law do not contain any mention of these charges.

11

negative balances in his trust account for individual client matters and when he over-drafted his account." Lastly, the hearing judge concluded that Mahone's conduct, taken as a whole, harms the reputation of the legal profession in violation of MLRPC 8.4(d).

### Rule 16-606.1: Attorney Trust Account Record-Keeping

Maryland Rule 16-606.1 requires attorneys to create and maintain records reflecting the status and activity of attorney trust accounts. The hearing judge found that although Mahone did not act with "malice or for personal gain," he violated this Rule:

> [Mahone] did not create and maintain records for the receipt [or] disbursement of funds [for] clients or [ ] third persons. He was unable to identify which client matters were associated with numerous transactions. [Mahone] admits that he failed to perform monthly reconciliations of his trust account. He was unable to reconcile many of the individual client ledgers or account for the balance of the funds maintained in his account at any given time. [Mahone] failed to create or maintain any records associated with the electronic transfers from his account.

### Rule 16-607: Commingling of Funds

Maryland Rule 16-607 prohibits attorneys from depositing personal funds into an attorney trust account. The hearing judge found that Mahone violated Rule 16-607 by "routinely [leaving] his own funds in his trust account as a 'buffer'" and depositing earned attorney's fees into the trust account. Additionally, the hearing judge found that none of the exceptions in Rule 16-607 b—which provides situations in which an attorney may commingle personal funds with the clients'—applied.

**Rule 16-609: Prohibited Transactions**

Under Maryland Rule 16-609, attorneys are prohibited from using funds within a trust account for any unauthorized purpose, withdrawing cash from a trust account, and creating a negative balance within a trust account. The hearing judge found that Mahone violated Rule 16-609 by using trust funds for unauthorized purposes, withdrawing $1,500 in cash from his trust account, and creating negative balances in accounts belonging to Juarez, Leppo, Mahmood, Rice, and "Unknown."

**BP § 10-306: Misuse of Trust Money**

BP § 10-306 prohibits attorneys from using trust money for any unauthorized purpose. The hearing judge found that Mahone violated BP § 10-306 for the same reasons he violated MLRPC 8.4(c) and Rule 16-609.

**DISCUSSION**

"In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record." *Att'y Grievance Comm'n v. Page*, 430 Md. 602, 626 (2013) (citation omitted). Within this independent review, however, we accept the hearing judge's findings of fact unless they are determined to be clearly erroneous. *Id.* (citation omitted). If the hearing judge's factual findings are founded on clear and convincing evidence, this Court will not disturb them. *Att'y Grievance Comm'n v. Ugwuonye*, 405 Md. 351, 368 (2008) (citation omitted). By contrast, this Court reviews the hearing judge's conclusions of law without deference. *Id.* (citation omitted).

## Exceptions

Both parties are permitted to file "(1) exceptions to the findings and conclusions of the hearing judge [and] (2) recommendations concerning the appropriate disposition . . . ." Md. Rule 16-758(b). If neither party files any exceptions, "the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any." Md. Rule 16-759(b)(2)(A). Mahone takes exception to multiple conclusions in the hearing judge's Findings of Fact and Conclusions of Law.[12] Bar Counsel has filed no exceptions.

First, Mahone excepts to the hearing judge's finding that he "failed to respond" to Bar Counsel's letters sent on April 10, 2014, November 18, 2014, and December 10, 2014. Mahone argues that because he did not willfully fail to respond to these inquires, the hearing judge's finding is incorrect. He asserts that he did not receive these letters because he had changed office locations. Similarly, Mahone excepts to the hearing judge's finding that he "failed to provide information, documentation, or explanation sufficient to account for the negative account balances, earned fee deposits, remaining balances, electronic transfers, unidentified transfers, and cash withdrawals for any of the

---

[12] Mahone, acting *pro se*, filed exceptions on October 4, 2016, in which he excepted to several of the hearing judge's findings of fact and any conclusions of law premised on the factual findings. Approximately three weeks later, Mahone requested leave to file a supplement in support of his exceptions. During oral argument, this Court granted Mahone's request and accepted his supplemental arguments. Therefore, we considered Mahone's supplemental arguments when ruling on his exceptions.

14

accounts in question." Mahone contends that he provided "information covering the substance of the requests." Therefore, he argues, this finding is inaccurate.

Mahone also takes exception to the hearing judge's findings that he created negative account balances, deposited earned attorney's fees into his attorney trust account, improperly maintained client and third party funds in his trust account, and failed to maintain records identifying whose money was withdrawn from the trust account. Mahone argues that these findings are erroneous, in part or in full, and unsupported by the record evidence. Specifically, he asserts that Bar Counsel has not presented evidence definitively establishing negative account balances and the commingling of funds within the trust account. Furthermore, Mahone argues that Bar Counsel did not prove that he failed to maintain proper bank records. He contends that the fact that he did not provide sufficient records to Bar Counsel does not mean that he did not maintain them. Mahone also excepts to any conclusions of law based on these factual findings.[13]

Lastly, Mahone takes exception to the hearing judge's conclusion that he violated MLRPC 8.4(c). He argues that Bar Counsel has not presented any evidence that he acted with dishonesty, fraud, deceit, or misrepresentation. Rather, Mahone contends, this case only involves negligence. He points out that the hearing judge did not find that he acted with any intent to deceive or that he made any misrepresentations. Moreover, Bar

_____

[13] In his Exceptions to Findings of Fact and Conclusions of Law, Mahone also took exception to the hearing judge's finding that he admitted to commingling funds. At oral argument, however, Mahone, through counsel, stated that he was no longer maintaining that exception.

15

Counsel presented no evidence that any client was deprived of any funds. Mahone asserts that his commingling of client and personal funds was due to his failure to move earned fees into his own account, and not any fraud or dishonesty on his part.

We overrule Mahone's exceptions to the hearing judge's findings of fact. Bar Counsel submitted sufficient evidence that Mahone failed to respond to letters requesting information related to the disciplinary investigation. Although Mahone's failure to respond may not have been willful, the hearing judge only found that he did not respond—she made no factual determination as to willfulness. In the Conclusions of Law, on the other hand, the hearing judge found a violation of MLRPC 8.1(b) based in part on Mahone's failure to respond to Bar Counsel's November 18, 2014 letter. We agree that Bar Counsel did not present sufficient evidence that Mahone **knowingly** failed to respond to the November 18, 2014 letter, as required by the 8.1(b). But the hearing judge's conclusion that Mahone violated MLRPC 8.1(b) was also based on letters Bar Counsel sent on March 10, 2014 and April 10, 2014. Mahone provided an incomplete response to Bar Counsel's March 10, 2014 letter and completely failed to respond to the April 10, 2014 letter. Bar Counsel's November 18, 2014 letter reminded Mahone that he had not responded to the April letter and once again requested additional information. "Bar Counsel's persistence will not absolve an attorney of the responsibility to make a reasonably prompt reply." *Att'y Grievance Comm'n v. Taylor*, 405 Md. 697, 719 (2008). Therefore, we overrule Mahone's exception on this issue.

We also overrule Mahone's exception to the hearing judge's finding that he failed to maintain records reflecting the activity of his attorney trust account. At oral argument

16

and through his supplemental briefings, Mahone admitted that he failed to maintain the required records concerning these accounts. As to Bar Counsel's requests for additional documentation, Mahone explained that "he could not produce what he admittedly failed to maintain." There is also sufficient evidence that Mahone created negative account balances, deposited earned attorney's fees into his attorney trust account, and commingled attorney, client, and third party funds. Therefore, we overrule Mahone's exceptions to these findings.

Lastly, we sustain Mahone's exception to the hearing judge's conclusion that he violated MLRPC 8.4(c). As discussed below, we find that Bar Counsel has not presented clear and convincing evidence that Mahone intended to deceive a client or third party. Additionally, we find that he has not made any false statement or misrepresentation in violation of MLRPC 8.4(c).

## Conclusions of Law

We agree with the hearing judge's conclusion that Mahone violated MLRPC 1.1, MLRPC 8.1(b), MLRPC 8.4(a) and (d); Maryland Rules 16.606.1, 16-607, 16-609; and BP § 10-306. We do not find, however, that Mahone violated MLRPC 8.4(c).

Mahone violated MLRPC 1.1 and Rule 16-606.1 when he failed to maintain records for his attorney trust account. He violated Rule 16-607 when he commingled his personal funds with client funds. When Mahone used trust account funds for an unauthorized purpose, withdrew cash from the account, and created negative balances within multiple client accounts, Mahone violated Rule 16-609 and BP § 10-306. Additionally, Mahone's failure to respond to Bar Counsel's requests for information

17

completely and in a timely manner constitute a violation of MLRPC 8.1(b). Taken together, these violations result in a breach of MLRPC 8.4(a). Lastly, Mahone's overall mismanagement of client funds constitutes conduct prejudicial to the administration of justice in violation of MLRPC 8.4(d).

Although Mahone's conduct clearly violated the provisions described above, he did not violate MLRPC 8.4(c), which prohibits attorneys from engaging in "conduct involving dishonesty, fraud, deceit or misrepresentation." Fraud is statutorily defined as "conduct that is fraudulent under the substantive or procedural law of [Maryland] and **has a purpose to deceive**." MLRPC 1.0(e) (emphasis added). "This does not include merely negligent misrepresentation or negligent failure to apprise another of relevant information." *Id.* cmt. 5. The MLRPC do not define dishonesty, deceit, or misrepresentation. Therefore, we use the ordinary meanings of these words. *See Bd. of Educ. v. Marks–Sloan*, 428 Md. 1, 28 (2012). In doing so, "it is helpful to consult their dictionary definitions." *Id.* *Black's Law Dictionary* ("*Black's*") defines "deceit" as "[t]he act of intentionally leading someone to believe something that is not true" or "an act designed to deceive or trick." *Deceit*, Black's Law Dictionary (10th ed. 2014).

Applying these definitions to this case, we conclude that Mahone did not engage in conduct involving fraud or deceit. There is no evidence that Mahone acted with a purpose to deceive in failing to maintain his trust account records or in failing to timely and completely respond to Bar Counsel. Furthermore, Bar Counsel has not presented any evidence suggesting that Mahone intentionally led Bar Counsel or any third party to

18

believe something that was not true. In fact, the hearing judge found that Mahone acted "without malice or personal gain."

As to the other two terms, *Black's* defines "dishonesty" as "behavior that deceives or cheats people" or "untruthfulness." *Dishonesty*, Black's Law Dictionary. And "misrepresentation" is defined as "[t]he act or an instance of making a false or misleading assertion about something, [usually] with the intent to deceive." *Misrepresentation*, Black's Law Dictionary. As used in MLRPC 8.4(c), a "misrepresentation is made when the attorney 'knows the statement is false,' and cannot be 'the product of mistake, misunderstanding, or inadvertence.'" *Att'y Grievance Comm'n v. Zeiger*, 428 Md. 546, 556 (2012) (quoting *Att'y Grievance Comm'n v. Siskind*, 401 Md. 41, 68–69 (2007)). An attorney can violate MLRPC 8.4(c) through dishonesty or misrepresentation absent any intent to deceive. *Att'y Grievance Comm'n v. Dore*, 433 Md. 685, 707–08 (2013). In this case, however, Mahone has not done so. Although Mahone was certainly negligent in his handling of his attorney trust account, Bar Counsel has not presented clear and convincing evidence that Mahone made a dishonest or false assertion in violation of MLRPC 8.4(c). *See Att'y Grievance Comm'n v. DiCicco*, 369 Md. 662, 684 (2002) ("It is well settled that this Court will not find a violation of [MLRPC] 8.4(c) when the attorney's misconduct is the product of 'negligent rather than intentional misconduct.'" (citations omitted)).

19

**Sanction for Violations of MLRPC 1.1, 8.1(b), 8.4(a) and (d); Maryland Rules 16-606.1, 16-607, and 16-609; and BP § 10-306**

This Court imposes sanctions on errant attorneys "to protect the public and the public's confidence in the legal profession" and "to deter other lawyers from violating the Rules of Professional Conduct." *Taylor*, 405 Md. at 720. To accomplish this, the sanction should be "commensurate with the nature and the gravity of the misconduct and the intent with which it was committed." *Id.* (citation omitted). Thus, the style and severity of the sanction "depends upon the facts and circumstances of the case." *Id.* This Court does not impose sanctions with the goal of punishing the attorney. *Id.*

When assessing the appropriate result, we often refer to the American Bar Association's *Standards for Imposing Lawyer Sanctions*, which advises that we consider four questions: "(1) What is the nature of the ethical duty violated?; (2) What was the lawyer's mental state?; (3) What was the extent of the actual or potential injury caused by the lawyer's misconduct?; and (4) Are there any aggravating or mitigating circumstances?" *Id.*; *see also* Standards for Imposing Lawyer Sanctions (Am. Bar Ass'n 1992), http://www.americanbar.org/content/dam/aba/administrative/professional_respons ibility/sanction_standards.authcheckdam.pdf [https://perma.cc/RAJ8-G6UH]. Possible mitigating factors include:

> [A]bsence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of

20

other penalties or sanctions; remorse; and finally, remoteness
of prior offenses.

*Att'y Grievance Comm'n v. Sweitzer*, 395 Md. 586, 599 (2006) (quoting *Att'y Grievance Comm'n v. Glenn*, 341 Md. 448, 488–89 (1996)).

Bar Counsel recommends that Mahone be disbarred. This case does not warrant such a severe sanction. This Court has held that "[d]isbarment is warranted in cases involving flagrant neglect of client affairs, including the failure to communicate with clients or respond to inquiries from Bar Counsel." *Att'y Grievance Comm'n v. Thomas*, 440 Md. 523, 558 (2014) (citations omitted). Additionally, absent "compelling extenuating circumstances," disbarment is ordinarily the sanction for intentional dishonest conduct, including theft. *Att'y Grievance Comm'n v. Gracey*, 448 Md. 1, 27 (2016) (citation omitted). "Although ignorance does not excuse a violation of disciplinary rules, a finding with respect to the intent with which a violation was committed is relevant on the issue of the appropriate sanction." *Att'y Grievance Comm'n v. Bell*, 432 Md. 542, 559 (2013) (quoting *Att'y Grievance Comm'n v. Obi*, 393 Md. 643, 658 (2006)). For the careless mishandling of funds that did not result in financial loss to the client, typically the appropriate sanction is indefinite suspension. *Id.* (collecting cases).

Here, it is clear that Mahone did not act with a dishonest or selfish intent and there is no evidence that any of Mahone's clients lost money due to his mismanagement. Furthermore, there is no evidence that Mahone's mismanagement of his attorney trust account impacted the quality of his legal representation, and Mahone has taken steps to

21

remedy his admittedly "sloppy recordkeeping." He has resolved to more closely examine his monthly statements and has contacted an accountant who agreed to monitor his attorney trust account.

In addition, even though Mahone failed to comply with Bar Counsel's requests in a timely manner, and when he did, he did not provide all the requested information, there is no evidence that he intentionally failed to comply with the investigation. Indeed, Mahone was deposed and attempted to clarify several of the questionable transactions highlighted in Miller's reports. Mahone could not satisfactorily explain every transaction for the very reason Bar Counsel pursued disciplinary action against him— mismanagement of his accounts and poor record-keeping. As Mahone himself pointed out, he cannot produce documentation that he failed to keep in the first place. Finally, Mahone has expressed remorse and there is no evidence of a dishonest or selfish motive.

*Attorney Grievance Commission v. Bell* and *Attorney Grievance Commission v. DiCicco* provide us with guidance on the appropriate sanction. In *Bell*, the attorney only maintained an attorney trust account, not an operating account, and paid his personal expenses from the trust account. *Bell*, 432 Md. at 556. His trust account records revealed multiple transactions that could not be attributed to a specific client, negative balances, and 45 cash disbursements totaling nearly $62,000 that Bell paid to himself. *Id.* at 548–49. In addition, Bell had received a prior reprimand for attempting to obtain an unreasonable fee from a client in violation of MLRPC 8.4(a). *Id.* at 560. Despite Bell's disciplinary history and "continuous mishandling" of his trust account, we rejected Bar Counsel's request for an indefinite suspension with right to re-apply after 90 days. *Id.* at

563. Instead, we imposed the sanction of indefinite suspension with the right to re-apply after 30 days. *Id.* As mitigating factors, we considered that Bell did not have the intent to defraud his clients, had attended a training on proper record-keeping, and had corrected his trust account overdrafts. *Id.* at 562. Thus, *Bell* illustrates that lack of intent to defraud and corrective action can mitigate trust account mismanagement.

Similarly, in *DiCicco*, we imposed an indefinite suspension with a right to re-apply after 90 days on an attorney who failed to maintain client funds in a separate trust account, frequently caused his trust account to have a negative balance, and used his trust account as his personal bank account. In rejecting Bar Counsel's recommendation for disbarment, we "consider[ed] the absence of fraudulent intent and the lack of evidence that any client suffered financial loss resulting from Respondent's misconduct." *DiCicco*, 369 Md. at 688. Therefore, it is appropriate for us to consider Mahone's intent, whether his clients suffered financial loss, and any corrective action he has taken in determining his sanction. Here, there is no evidence that any of Mahone's clients suffered financial loss or that Mahone intended to defraud them, and he has hired an accountant to help him manage his financial affairs—all mitigating factors.

Arguing in favor of disbarment, Bar Counsel emphasizes that Mahone has violated the MLRPC on three previous occasions. Although this history does constitute an aggravating factor, we do not agree that these prior violations were severe enough to warrant Mahone's disbarment in this case. In 1997, Mahone was sanctioned with an indefinite suspension for MLRPC violations related to withholding taxes. In 2007, Mahone was reprimanded for failing to respond to Bar Counsel's lawful requests for

information.  In 2012, Mahone was reprimanded for failing to safe-keep third party funds. Mahone's last indefinite suspension was almost 20 years ago.  Additionally, his last two reprimands were both entered by consent order, which shows he cooperated with Bar Counsel and took responsibility for his conduct in these matters.  We find that these prior violations are outweighed by the lack of any intent to deceive or dishonesty in this case.

That said, Mahone's prior sanction and reprimands are still factors we must consider when fashioning a sanction.  Mahone requests that we impose indefinite suspension with the right to re-apply after a term this Court deems appropriate.  But given his disciplinary history—three different disciplinary actions, two of which involved the mishandling of money—we find that a more severe sanction is warranted.  *See Att'y Grievance Comm'n v. Mba-Jonas*, 397 Md. 690, 702 (2007) (characterizing definite suspensions and indefinite suspensions with right to re-apply as "more lenient" than permanent indefinite suspension).  Therefore, we decline to adopt Mahone's requested sanction.

Accordingly, we conclude that indefinite suspension is the appropriate sanction.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d). JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST WILLIE J. MAHONE IN THE SUM OF THESE COSTS.**

24

Circuit Court for Montgomery County
Case No. 32111-M

Argued: November 3, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 82

September Term, 2015

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

WILLIE JAMES MAHONE

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Concurring and Dissenting Opinion by Watts,
J., which McDonald, J., joins

_____

Filed: December 19, 2016

Respectfully, I concur in part and dissent in part. I concur with respect to the violation of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC"), and I dissent solely as to the appropriate sanction. Even with the exception to the MLRPC 8.4(c) violation having been sustained, given the seriousness of Willie James Mahone ("Mahone")'s misconduct and his prior disciplinary record, from my perspective, disbarment is the appropriate sanction in this case.

The hearing judge concluded that Mahone had violated MLRPC 1.1 (Competence), 8.1(b) (Disciplinary Matters), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), and 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice); Maryland Rules 16-606.1 (Attorney Trust Account Record-Keeping), 16-607 (Commingling of Funds), and 16-609 (Prohibited Transactions); and Md. Code Ann., Bus. Occ. & Prof. ("BOP") § 10-306 (Trust Money Restrictions). The hearing judge determined that Mahone's violation of Maryland Rule 16-606.1 was "without malice or personal gain[.]" The Majority upholds the hearing judge's conclusions as to MLRPC 1.1, 8.1(b), and 8.4(d); Maryland Rules 16-606.1, 16-607, and 16-609; and BOP § 10-306. See Maj. Slip Op. at 17. The Majority, however, sustains Mahone's exception to the hearing judge's conclusion as to MLRPC 8.4(c). See id.

Taking into account the Majority's sustaining of the exception as to the MLRPC 8.4(c) violation and the hearing judge's determination that Mahone violated Maryland Rule 16-606.1 without malice or personal gain does not obfuscate the conclusion that disbarment is warranted. In 1997, this Court indefinitely suspended Mahone from the practice of law in Maryland for MLRPC violations that occurred when Mahone failed to

comply with his obligations with regard to withholding taxes, see id. at 23; in 2007, this Court granted a Joint Petition for Reprimand by Consent for Mahone's violation of MLRPC 8.1(b) (Disciplinary Matters), see Attorney Grievance Comm'n v. Mahone, 400 Md. 95, 927 A.2d 418 (2007); and, most recently, in 2012, this Court granted a joint petition for reprimand for Mahone's violations of MLRPC 1.1 (Competence), 1.15(a), 1.15(e) (Safekeeping Property), and 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice), see Attorney Grievance Comm'n v. Mahone, 425 Md. 343, 40 A.3d 1038 (2012)—i.e., this Court reprimanded Mahone for mishandling his attorney trust account, which is essentially the same as the misconduct in this case. This Court's action in indefinitely suspending Mahone represents the fourth occasion on which he has been sanctioned for misconduct. Although Mahone's indefinite suspension occurred in 1997, and may arguably be considered remote, the repetitive nature of Mahone's misconduct clearly raises the issue of the need to protect the public and deter Mahone and other lawyers from similar misconduct.

In discussing Mahone's prior disciplinary record, the Majority theorizes that, at least with regard to his two reprimands, Mahone took responsibility for his actions and cooperated with Bar Counsel by entering a joint petition for reprimand in each case. See Maj. Slip Op. at 24. This is one interpretation. Another explanation for the joint petitions and agreed-upon reprimands is that Mahone, recognizing that he had been the subject of an indefinite suspension in 1997, simply sought to make the best arrangement possible to minimize the sanction imposed in his last two attorney grievance cases. Certainly, that he engaged in further misconduct after his 2007 reprimand, and was again

reprimanded in 2012, undermines any conclusion that Mahone has benefited from his earlier indefinite suspension. Overall, the continuum of attorney grievance cases demonstrates that Mahone was not deterred by his prior encounters with Bar Counsel. And, the frequency of his misconduct indicates that he would pose a threat to future clients. Given his track record, and the nature of the misconduct in this case—namely, his mismanagement of his attorney trust account and his failure to comply with Bar Counsel's investigation, which is essentially the same misconduct that Mahone has previously engaged in—disbarment is the appropriate sanction.

For the above reasons, respectfully, I concur in part and dissent in part.

Judge McDonald has authorized me to state that he joins in this opinion.