*Attorney Grievance Commission of Maryland v. Gregory J. Milton*, Misc. Docket AG No. 44, September Term, 2018. Opinion by Harrell, J.

**ATTORNEY MISCONDUCT — DISCIPLINE — INDEFINITE SUSPENSION**

The Court of Appeals suspended indefinitely Gregory J. Milton from the practice of law in Maryland. Respondent violated Maryland Attorneys' Rules of Professional Conduct 19-301.15 (Safekeeping Property), 19-303.1 (Meritorious Claims and Contentions), 19-308.1(b) (Bar Admission and Disciplinary Matters), 19-308.4(a) & (d) (Misconduct), 19-407 (Attorney Trust Account Record-Keeping), and 19-410 (Prohibited Transactions). Respondent failed on a number of occasions to provide Bar Counsel with requested information regarding a bona fide investigation into his attorney trust account, failed to provide records to show that he maintained properly his attorney trust account, filed multiple frivolous motions, and made prohibited cash withdrawals from his attorney trust account.

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 44

September Term, 2018

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

GREGORY J. MILTON

Barbera, C.J.,
McDonald,
Watts,
Hotten,
Getty,
Booth,
Harrell, Glenn T., Jr.
　　(Senior Judge, Specially Assigned)

JJ.

Opinion by Harrell, J.

Filed: March 3, 2020



Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.

Suzanne C. Johnson, Clerk

Petitioner, the Attorney Grievance Commission of Maryland ("Commission" or "AGC"), by its Bar Counsel, Lydia E. Lawless, Esq., and Assistant Bar Counsel, Jennifer L. Thompson, Esq., filed charges against Respondent, Gregory M. Milton ("Milton"), pursuant to Md. Rule 19-271. The charging petition was assigned by us to the Honorable Judge Judy L. Woodall of the Circuit Court for Prince George's County to conduct the baseline proceedings in this matter.

Milton was served with the Petition for Disciplinary or Remedial Action on 5 March 2019 through the Client Protection Fund of the Bar of Maryland, pursuant to Md. Rule 19-723(b).[1]  Milton failed to answer timely by the stated deadline of 21 March 2019. In lieu, he filed on 8 April 2019 a belated Motion to Extend Time to Respond, requesting an extension until 16 April 2019. His motion was granted. Yet, he failed to answer timely the petition by that date as well. The Commission filed a motion for order of default, which was granted. Thereafter, Milton requested another extension of time to

---

[1] Md. Rule 19-723(b) provides:
   a) **Alternative Service**. If after reasonable efforts the attorney cannot be served personally, service may be made on the attorney by serving the employee designated by the Client Protection Fund pursuant to Rule 19-604, who shall be deemed the attorney's agent for receipt of service. The employee promptly shall (1) send, by certified and first-class mail, a copy of the papers so served to the attorney at the attorney's address maintained in the Fund's records and to any other address provided by Bar Counsel, and (2) file a certificate of the mailing with the clerk and send a copy of the certificate to Bar Counsel.

respond to the petition, which was denied. On 10 June 2019, Milton filed a motion to dismiss the Commission's petition and vacate the order of default.[2]

An evidentiary hearing before Judge Woodall was scheduled for 8 July 2019. At its inception, the court found that Milton's failure to answer timely the petition was unjustified and denied his motion to vacate the order of default. Bar Counsel entered into evidence first a notice the AGC received from Capital One Bank (the "Bank") alerting it to the possibility of an overdraft from Milton's attorney trust account. Bar Counsel followed that with copies of the numerous letters and emails sent to Milton requesting financial information and documents to facilitate investigation into the handling of his trust account during the relevant period. A written response by Milton to Bar Counsel's initial request for information was entered also, in which Milton stated there had been no overdraft because it was the Bank's error that resulted in the notice being sent. Accompanying his letter were bank statements from Capital One Bank that brought to Bar Counsel's attention possible other violations in the form of "customer withdrawals" from the account ("Petitioner's Exhibit 4"). Other than his initial response, the only other evidence of "compliance" with his duty to cooperate with the inquiry and subsequent investigation was a single email from Milton, Petitioner's Exhibit 9, in which he stated

---

[2] By operation of Md. Rules 19-724(c), 2-613, and 2-323(e), the factual averments in Bar Counsel's Petition for Disciplinary or Remedial Action are deemed admitted by a respondent against whom an order of default is entered. *See Attorney Grievance Comm'n v. De La Paz*, 418 Md. 534 (2011); *Attorney Grievance Comm'n v. Lee*, 390 Md. 517 (2006).

again that he did not need to produce further documents as the Bank's error was to blame for the overdraft notice. Petitioner's Exhibits 13-19 and 24 were an amalgam of two petitions filed by Milton to quash Bar Counsel's records subpoena of Capital One Bank regarding his trust account records, Bar Counsel's opposition to the petitions, and the orders of the circuit court denying both of Milton's petitions. Finally, Bar Counsel entered, in addition to its correspondence to Milton, a spreadsheet prepared by the Office of Bar Counsel analyzing the "customer withdrawals" on the bank records (part of Petitioner's Exhibit 4) as "cash withdrawals."

Judge Woodall issued her written Findings and Conclusions on 8 August 2019. She concluded that Milton violated the following Maryland Attorneys' Rules of Professional Conduct ("MARPC"): (1) Rule 19-301.15; (2) Rule 19-303.1; (3) Rule 19-308.1(b); (4) Rule 19-308.4(a) & (d); (5) Rule 19-407; and (6) Rule 19-410.

The Commission filed with us no exceptions to Judge Woodall's Findings and Conclusions and recommended that this Court suspend indefinitely Milton from the practice of law, noting that, because he is a repeat violator of the MARPC, "[r]espondent does not or will not grasp that his misconduct is inconsistent with his professional obligations." *See Attorney Grievance Comm'n v. Marcalus*, 442 Md. 197, 211 (2015) (holding that the respondent "demonstrated that he is extremely likely to repeat his misconduct, no matter how many times this Court suspends him from the practice of law in Maryland"). Milton filed timely written exceptions to Judge Woodall's Findings and

3

Conclusions. For the following reasons we overrule Milton's exceptions and hold that his violations of the MARPC warrant indefinite suspension.

**FINDINGS OF FACT**

Satisfied that the Office of Bar Counsel met the clear and convincing standard of evidence required of it in attorney disciplinary cases, the hearing judge marshaled the following facts, which we rephrase and summarize.

Milton was admitted to the Maryland Bar on 13 December 2006. He maintained his law office in Prince George's County. On 21 July 2017, Capital One Bank contacted Milton, notifying him that his attorney trust account maintained with the Bank had become overdrawn on 30 June 2017. Upon receiving the Bank's concurrent notice to it of the supposed overdraft, the Office of Bar Counsel, by letter dated 1 August 2017, requested of Milton that he produce (within 10 days) copies of his client ledgers, deposit slips, cancelled checks, and monthly bank statements for May 2017 through July 2017. Bar Counsel called to Milton's attention in its letter that Rule 19-308.1 required Milton to comply with lawful demands of Bar Counsel. Milton received the letter on 7 August 2017.

In his August 18 reply, Milton, referring to claimed irregularities by Capital One Bank that resulted in the overdraft, disclaimed any personal responsibility for the episode. Attached to his response were copies of certain bank statements relative to his trust account. Rather than provide any of the other information requested by Bar Counsel,

4

Milton claimed the production of the breadth of further documents sought by Bar Counsel was unnecessary, stating that "given the Bank's additional documentation evidencing the irregularity with their own ledger, and records . . . the issue is clearly an irregularity with a Bank Teller, which I clearly cannot control."[3] Unfortunately for Milton, the bank statements he provided reflected that he made seven "customer withdrawals" from the trust account over the three month period totaling $4,050.00, in amounts varying from $200.00 to $1,000.00.

Bar Counsel sent Milton a follow-up letter, dated 21 September 2017, renewing its request for copies of his client ledgers, deposit slips, cancelled checks, and, additionally, an electronic transfer log for the previously stated period. Milton did not respond to this request. Bar Counsel informed Milton on 24 October 2017 that the matter had been docketed for investigation, requesting anew the earlier requested documents be provided within 15 days. Once again, Milton observed a vow of silence.

Following Bar Counsel's fourth attempt (13 November 2017) requesting Milton's cooperation and reminding him of his obligation to respond, Milton sent a letter, dated 22 November 2017, claiming to have "lost track" of the earlier correspondence from Bar Counsel and again claiming that the production of further documents was unnecessary as the overdraft was a result of the Bank's ineptitude. Consequently, he produced none of

---

[3] Although Milton produced bank statements for the requested time period, he failed to produce copies of client ledgers, deposit slips, and/or cancelled checks.

5

the additional documents sought. He renewed his view that further investigation was unwarranted.

On 7 December 2017, Bar Counsel informed Milton that, as a result of his refusal to provide the requested documentation, it planned to subpoena the requested records from Capital One Bank (or as much of the requested records as may be in the Bank's possession). Bar Counsel noted also that Milton's cash/customer withdrawals from the attorney trust account (noted on the bank statements supplied by Milton with his 18 August 2017 letter) were prohibited by Rule 19-410 and expanded its request for copies of his client ledgers to the period from January 2017 through November 2017. Milton failed again to provide the requested documents, although he accepted service on 18 December 2017 of his copy of the investigative subpoena to the Bank.

In its last-ditch efforts to elicit information, Bar Counsel contacted Milton regarding his incomplete and absent responses, once by email on 30 December 2017 and another by letter dated 8 January 2018. The letter set a deadline of 19 January 2018 for Milton to respond and provide the requested documentation. If for no apparent reason other than consistency, Milton failed to respond directly. He took a different tact however.

On 9 January 2018, Milton filed a Petition to Quash. In his petition, Milton claimed he had not committed misconduct and that there was no good faith basis on which to seek the requested bank records through the subpoena. Further, he maintained that the financial documents requested by Bar Counsel had been denied in a prior,

6

unrelated, proceeding in the Circuit Court for Montgomery County. There was no challenge in the petition to Bar Counsel's legal authority to issue the subpoena. Bar Counsel filed an Opposition to the Petition to Quash and a Motion to Enforce Subpoena[4] on 24 January 2018, arguing that Milton's refusal, coupled with evidence of the impermissible cash withdrawals, demonstrated that the subpoena was necessary to further its investigation.

The petition to quash was denied on 26 February 2018. The court found that Milton's argument "strain[ed] credulity and logic" and stated that "there is every possibility [that] the documents and records sought by the Commission's subpoena will produce evidence relevan[t] to the general subject matter of the Commission's investigation in this matter."

Milton filed an amended petition to quash on 9 March 2018, claiming Bar Counsel's investigation was based on "pure supposition." Again, Milton did not advance any assertion that Bar Counsel did not have authority to request such a subpoena. Petitioner filed its opposition on 23 March 2018. The amended petition to quash was denied, with the court finding that "Bar Counsel [] act[ed] within its mandate," and that it "has not engaged in conjecture or supposition and is carrying out its investigative responsibilities."

---

[4] *See* Md. Rule 19-712(e).

Bar Counsel received the subpoenaed trust account records from Capital One Bank in March 2018. It requested that Milton provide copies of his client ledgers by 3 April 2018. Attached to this letter was a list of specific and suspect trust account transactions. Bar Counsel requested Milton to identify the related client matter for each transaction. A constant Milton failed to respond to the letter. Bar Counsel wrote another letter on 13 April 2018, requesting the materials, but to no avail.

## CONCLUSIONS OF LAW

As a result of her findings of fact, the hearing judge rendered the following conclusions of law:

> This Court finds, by clear and convincing evidence, that Respondent violated the following Maryland Rules and Maryland Attorneys' Rules of Professional Conduct. Additional factual findings are set forth in this section as necessary, to explain the Court's conclusions.

> **Rule 19-301.15. Safekeeping Property (1.15).**

> Rule 19-3-1.15 provides, in part:

> (a) An attorney shall hold property of clients or third persons that is in an attorney's possession in connection with a representation separate from the attorney's own property. Funds shall be kept in a separate account maintained pursuant to Title 19, Chapter 400 of the Maryland Rules, *and records shall be created and maintained in accordance with the Rules in that Chapter* (emphasis added). Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. *Complete records of the account funds and of other property shall be kept by the attorney and shall be preserved for a period of at least five years after the date the record was created* (emphasis added).

Respondent's failure to create and maintain client matter records that reflect the receipt, maintenance, and disbursement of client funds in association with his attorney trust account violated Rule 19-301.15(a). Respondent failed to produce any records after repeated requests to do so.

**Rule 19.303.1. Meritorious Claims and Contentions (3.1).**

Rule 19-303.1 provides:

An attorney shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes, for example, a good faith argument for an extension, modification or reversal of existing law. An attorney may nevertheless so defend the proceeding as to require that every element of the moving party's case be established.

Pursuant to M[d.] Rule 19-703(b), Bar Counsel is charged with investigating "professional misconduct or incapacity on the part of an attorney," which includes the issuance of investigative subpoenas. See 19-703(b)(2). Pursuant to M[d.] 19-712(a)(1), upon authorization of the Chair of the Attorney Grievance Commission, Bar Counsel may issue an investigative subpoena to "compel the attendance of witnesses and the production of designated documents or other tangible things at a time and place specified in the subpoena if the Chair finds that (A) the subpoena is necessary to and in furtherance of an investigation being conducted by Bar Counsel."

Respondent knowingly and repeatedly failed to provide Bar Counsel with the financial information and documentation sought during the investigation into the trust account overdraft. By letter dated December 7, 2017, Bar Counsel advised Respondent that "[i]n light of your refusal to provide Bar Counsel with your attorney trust account records, we intend to issue a subpoena to Capital One Bank." Petitioner's Ex[hibit] 10. In addition, Bar Counsel made Respondent aware of the investigation into the impermissible cash withdrawals.

On January 9, 2018, Respondent filed the Petition to Quash in the Circuit Court for Prince George's County, seeking to quash Bar Counsel's investigative subpoena. In the Petition to Quash, Respondent omitted any mention of the true reasons for the issuance of the subpoena. Instead, Respondent put forth the unsupported argument that because Capital One

Bank erroneously reported an overdraft of Respondent's trust account, Bar Counsel issued the subpoena without a "good faith basis." The Petition to Quash was not supported by fact or law. Respondent's conduct violated Rule 19-303.1. *See* Comment [2] to Rule 19-303.1 ("[t]he action is frivolous, however, if the attorney is unable [] to make a good faith argument on the merits of the actions taken"); *Attorney Grievance Comm*[']*n v. Phillips,* 451 Md. 653[] (2017).

On February 26, 2018, the Circuit Court for Prince George's County rejected Respondent's arguments and denied the Petition to Quash. The court determined that Bar Counsel's investigative subpoena was reasonable under the circumstances and that there was "every possibility the documents and records sought by the Commission's subpoena will produce evidence relevant to the general subject of the Commission's investigation." Cognizant that the court rejected his arguments to quash the subpoena, on March 9, 2018, Respondent nevertheless filed an Amended Petition to Quash Bar Counsel's investigative subpoena advancing similar claims. Respondent's Amended Petition to Quash failed to assert any credible argument that Bar Counsel lacked the legal authority to issue the investigative subpoena. Respondent's conduct violated Rule 19-303.1.

**[Rule 19-308.1 Bar Admission and Disciplinary Matters (8.1).]**

[Rule 19-308.1] provides in part:

An applicant for admission or reinstatement to the bar, or an attorney in connection with a bar admission application or in connection with a disciplinary matter, shall not: (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, *or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority* (Emphasis added), except that this Rule does not require disclosure of information otherwise protected by Rule 19-301.6 (1.6).

Respondent violated Rule 19-308.1(b) by repeatedly failing to respond to Bar Counsel's letters or supply the financial documentation requested. By letter dated August 1, 2017, in response to a trust account overdraft notice received from Capital One Bank, Bar Counsel wrote Respondent and requested (among other things) copies of his "client ledgers, deposit slips, cancelled checks (front and back, if available),["] and monthly bank statements for the period of "May 2017 to the present." While Respondent

provided the requested bank statements, he failed to provide the remainder of the documentation.

On September 21, 2017, Bar Counsel wrote to Respondent and again requested copies of his "client ledgers, deposit slips, cancelled checks (front & back, if available)" for the period of "May 2017 through July 2017." In addition, Bar Counsel requested Respondent's electronic transfer log for the period requested. Respondent failed to provide the requested materials or otherwise respond to Bar Counsel's letter.

On October 24, 2017, Bar Counsel wrote Respondent and requested a response to the September 21, 2017 letter, including the requested financial documentation. Respondent failed to provide the requested materials or otherwise respond to Bar Counsel's letter. On November 13, 2017, Bar Counsel wrote to Respondent and requested a response to Bar Counsel's letters from September 21st and October 24th. While Respondent supplied a written response to the letters on November 22, 2017, he failed to supply the requested financial documentation.

By letter dated December 7, 2017, Bar Counsel requested copies of Respondent's client ledgers required to be maintained pursuant to [] Rule 19-407(a)(3) for the period of January 2017 through November 2017. Respondent failed to supply the requested documentation. On December 30, 2017, Bar Counsel emailed Respondent and asked whether he intended to comply with Bar Counsel's earlier request for his client ledgers. Respondent failed to respond in any manner.

On January 8, 2018, Bar Counsel wrote to Respondent and again requested copies of his client ledgers. Bar Counsel informed Respondent that if he did not maintain client ledgers, he should so advise Bar Counsel. Respondent failed to respond to the letter or otherwise provide copies of his client ledgers. Instead, on January 9, 2018, Respondent filed in the Circuit Court for Prince George's County, a Petition to Quash Bar Counsel's investigative subpoena.

On March 19, 2018, after reviewing Respondent's attorney trust account records, received from Capital One Bank, Bar Counsel wrote to Respondent and requested that he provide copies of his client ledgers for the period of January 2017 through January 2018. With the letter, Bar Counsel attached a list of trust account transactions and requested Respondent identify the client to which each transaction related. Respondent failed to respond to

the letter or otherwise provide the requested financial materials. On April 13, 2018, Bar Counsel wrote Respondent and requested a response to Bar Counsel's letter of March 19, 2018. Respondent failed to respond to the letter or otherwise supply the requested materials.

From August 1, 2017 through April 13, 2018, Bar Counsel made nine (9) separate lawful requests to Respondent for information and documentation related to his attorney trust account. Respondent knowingly failed and refused to provide Bar Counsel the materials sought, in violation of [] Rule 19-308.1(b).

**Rule 19-308.4. Misconduct (8.4).**

Rule 19-308.4 provides, in part:

It is professional misconduct for an attorney to:

(d) engage in conduct that is prejudicial to the administration of justice;

Respondent's refusal to cooperate with Bar Counsel or comply with Bar Counsel's requests for information and documentation (as detailed above) and Respondent's filing of two (2) petitions to quash Bar Counsel's investigative subpoena, violates Rule 19-308.4(d). *See Attorney Grievance Comm*[']*n v. Phillips*, 451 Md. 476, 490[] (2017) (in refusing to cooperate with Bar Counsel and by filing a frivolous motion to quash an investigative subpoena, attorney obstructed Bar Counsel's investigation in a manner prejudicial to the administration of justice, and his conduct as a whole brought the legal profession into disrepute, in violation of Rule 8.4(d)); *Attorney Grievance Comm*[']*n v. Kremer*, 432 Md. 325, 337[] (2013) (attorney violated Rule 8.4(d) by failing to respond to Bar Counsel's requests for information).

Additionally, Respondent violated Rule 8.4(a) by violation of several other Rules of Professional Conduct. *See Attorney Grievance Comm*[']*n v. Gerace,* 433 Md. 632, 645[] (2013) ("Rule 8.4(a) is violated when other Rules of Professional Conduct are breached.")

**Maryland Rule 19-407. Attorney Trust Account Record-Keeping.**

M[d.] Rule 19-407 provides, in part:

(a) Creation of Records.   The following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons:

(3) *Client Matter Records*.   A record for each client matter in which the attorney receives funds in trust, as follows:

(A) for each attorney trust account transaction, a record that shows (i) the date of the deposit or disbursement; (ii) the amount of the deposit or disbursement; (iii) the purpose for which the funds are intended; (iv) for a disbursement, the payee and the check number or other payment identification; and (v) the balance of funds remaining in the account in connection with the matter[.]

Respondent's failure to create and maintain client matter records that reflect the receipt, maintenance, and disbursement of client funds in association with his attorney trust account violates M[d.] Rule 19-407(a).   Respondent failed to produce any records that would indicate the creation and maintenance of the requested client records.

**Maryland Rule 19-410.   Prohibited Transactions.**

M[d.] Rule 19-410 provides, in part:

(b) No Cash Disbursements.   An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer, and no cash withdrawal may be made from an automated teller machine or by any other method.   All disbursements from an attorney trust account shall be made by check or electronic transfer.

From May 2017 through July 2017, Respondent made several withdrawals in cash from this attorney trust account in the following installments:

| Date | Amount |
|------|--------|
| May 10, 2017 | $1,000.00 |
| June 19, 2017 | $500.00 |
| July 3, 2017 | $1,000.00 |

13

| July 26, 2017 | $500.00 |
|---|---|
| July 28, 2017 | $200.00 |
| July 31, 2017 | $350.00 |
| July 31, 2017 | $500.00 |

Respondent's conduct violated Rule 19-410.

## STANDARD OF REVIEW

In attorney grievance proceedings, the findings of fact of the hearing judge are "*prima facie* correct and will not be disturbed unless they are shown to be clearly erroneous." *Attorney Grievance Comm'n v. Harrington*, 367 Md. 36, 49 (2001). Moreover, when neither party takes exception to a finding of fact it is considered "by us as conclusively established." *Attorney Grievance Comm'n v. White*, 448 Md. 33, 50 (2016). When a party has filed an exception (or exceptions), however, we determine whether the findings of fact are proven by the standard of proof demanded by Md. Rule 19-727(c), which states that "Bar Counsel has the burden of proving the averments of the petition by clear and convincing evidence. If the attorney asserts an affirmative defense or a matter of mitigation or extenuation, the attorney has the burden of proving the defense or matter by a preponderance of the evidence." The findings of fact will not be found to be clearly erroneous if they are supported by "any competent material evidence." *Attorney Grievance Comm'n v. McDonald*, 437 Md. 1, 16 (2014). We

14

review conclusions of law made by the hearing judge without deference. *Attorney Grievance Comm'n v. Whitehead*, 405 Md. 240, 253 (2008).

## **DISCUSSION**

Bar Counsel did not except to the hearing judge's findings of fact or conclusions of law. Respondent, however, took at least four itemized exceptions to the findings of the hearing judge. Further, Respondent appears to take a fifth exception to the judge's findings, although not labeling it as such.

At the outset, we will address the non-itemized, implied exception Milton appears to mount. This "exception" is based on his interpretation of Md. Rule 19-413. The Rule states:

> Upon receipt of a report of overdraft on or dishonored instrument drawn on an attorney trust account, Bar Counsel shall contact the attorney or law firm maintaining the account and request an informal explanation for the overdraft or dishonored instrument. The attorney or law firm shall provide any records of the account necessary to support the explanation. If Bar Counsel has requested but has failed to receive a satisfactory explanation for any overdraft or dishonored check, or if good cause exists to believe that an attorney or law firm has failed to perform any duty under these Rules, Bar Counsel may secure compliance with these Rules by appropriate means approved by the Commission, including application for an audit pursuant to Rule 19-731 (Audit of Attorney Accounts and Records).

According to Milton's interpretation, upon the tendering of his explanation to Bar Counsel that there was no actual overdraft of his attorney trust account on 30 June 2017 and that a bank error was to blame for the notices sent to Milton and Bar Counsel, Bar Counsel's further inquiry into Milton's trust account practices (*i.e.*, possible cash

15

withdrawals) should have ended. Bar Counsel concedes that, although the 30 June 2017 overdraft notice was the result of the Bank's error, the information provided by Milton in the bank statements appended to his 18 August 2017 response contained also information suggesting prohibited cash withdrawals from the trust account. It was these withdrawals, as well as the failure to respond to Bar Counsel's requests for information, that resulted in the charges being filed against Milton.

Thus, the question raised apparently by Milton is, essentially, if the initial inquiry by Bar Counsel into a questionable occurrence (based on a good faith belief that perhaps an overdraft violation had occurred) is shown to have not been the attorney's fault, may other information of possible independent wrong-doing (revealed by the attorney's initial reply to Bar Counsel's inquiry) warrant further investigation? We hold that it can (and did in this case). There is no doubt on this record that Bar Counsel's inquiry into Milton's attorney trust account was undertaken in good faith. The information requested by Bar Counsel in their initial letter was a standard operating procedure when investigating an overdraft notice involving an attorney trust account. *See Attorney Grievance Comm'n v. Mahone*, 451 Md. 25, 34 (2016) (Bar Counsel requested "an explanation of the overdraft and client ledgers, monthly bank statements, deposit slips, and canceled checks"). Although a rational and later corroborated explanation clearing Milton of blame was provided for the apparent overdraft, the bank statements provided by Milton with his explanation gave Bar Counsel good cause to continue investigating the circumstances of the potentially prohibited withdrawals.

16

During oral argument before this Court, Milton made reference to that part of Md. Rule 19-413 providing an avenue for continued investigation by Bar Counsel if there is good cause to believe an attorney failed to perform a duty under the rules. Milton believes, as we understand his argument, that this Rule limited ongoing investigations to a formal audit, and possibly only one conducted by a CPA. This is a misinterpretation of the regulation.

Rule 19-413 states, in relevant part, "if good cause exists to believe that an attorney or law firm has failed to perform any duty under these Rules, Bar Counsel may secure compliance with these Rules by appropriate means approved by the Commission, including application for an audit . . . ." Milton claims that there was no way, based on the bank statements provided in his initial letter, to determine whether the withdrawals identified in the bank statements were impermissible cash withdrawals or some type of permissible transfer. Although we shall address this contention in more detail as part of addressing one or more of Milton's labeled exceptions *infra,* based on the information before Bar Counsel, it had good cause, without further ado, to investigate the transactions that were labeled as "customer withdrawals" on the bank records supplied by Milton. Milton had many opportunities to prove that these were not cash withdrawals by providing the requested documentary information to Bar Counsel, but failed to do so. Further, had he not tied his hands by failing to answer the Petition timely, he would have had another opportunity to adduce evidence at the 8 July 2019 hearing. His unjustified

failure to file a timely answer and the resultant order for default precluded his ability to advance such evidence (if it existed) at the evidentiary hearing before Judge Woodall.

Although an audit may be a viable alternative to ensure compliance with the rules regarding monetary or book-keeping circumstances in many contexts, it is not the only tool available to Bar Counsel in every potential attorney financial malfeasance case. Bar Counsel was well within the scope of the Rules to request additional financial information to conduct its investigation into the withdrawals that were discovered upon receipt of Milton's initial explanation of the overdraft and the limited bank statements he supplied.

## 1. "But the Overdraft Check Cleared!" Defense.

### A. Summary

Milton's first itemized exception rests, essentially, on the foundation that there was no "overdraft" or "dishonored check" because the check in question cleared on 18 July 2017, and thus it was the Bank's error that created the overdraft notice, not something nefarious done by him. As Milton provided a copy of the Bank's letter explaining the error and that the Bank recorded an adjustment debit, he claims that this explanation was sufficient to close the inquiry at that point, without him having to collect and transmit the other documents requested by Bar Counsel. It is the belief of Milton that, because there was no overdraft, Bar Counsel "did not have 'good cause' to believe

18

that the attorney 'failed to perform any duty under these Rules' as the explanation was patently 'satisfactory.'"

In his exception, Milton cites to American Bar Association Rule 3.3, Candor Toward the Tribunal, which prohibits an attorney from making or failing to "correct a false statement of material fact or law previously made to the tribunal by the lawyer." It further prohibits attorneys from "offer[ing] evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal." Milton's contention is that once Bar Counsel accepted the explanation that that the check cleared and that the Bank was in error, no (further) investigation should ensue.

### B. Analysis

It is accurate to point out that the check did clear ultimately and Milton provided to Bar Counsel the Bank's explanation for the sending of the overdraft; however, these facts do not have the sweeping cabining effect on Bar Counsel's discretion that Milton places on them. The hearing judge determined that Milton violated, by his other misconduct, the following MARPC rules: (1) Rule 19-301.15 – Safekeeping Property; (2) Rule 19-303.1 – Meritorious Claims and Contentions; (3) Rule 19-308.1 – Bar Admission and Disciplinary Matters; (4) Rule 19-308.4 – Misconduct; (5) Rule 19-407 – Attorney Trust Account Record Keeping; and (6) Rule 19-410 – Prohibited Transactions. The

facts latched onto by Milton in this exception have no bearing on any of the violations he has been deemed to have committed.

In finding that Milton violated Rule 19-301.15, the hearing judge determined that Milton's failure to create and maintain the proper and required documentation to show he was safekeeping client funds constituted a violation.[5] Further, the judge determined that, by failing to provide the other documents upon request of Bar Counsel, Milton was in violation of this rule. Milton cannot maintain that the inquiry commenced as the result of an apparent overdraft was opened improperly—Bar Counsel was unaware of who was responsible for the error (if error it was) when it first contacted Milton to seek the initial array of documents. Milton produced very few of the documents sought. His failure to produce the remaining documents was enough to establish a violation. Milton failed also to respond to later requests related to the withdrawals from the trust account which, independently, were sufficient to establish violations of the Rule as well.

As to the violation of Rule 19-303.1, the hearing judge found that Milton brought a motion to quash the subpoena when Bar Counsel sought some of the missing documents directly from the Bank. The motion to quash was based, essentially, on Milton's claim that the Bank's error was the reason for the overdraft notice and there was no basis for a continuing investigation. The court denied this motion. Milton pursued

---

[5] The hearing judge determined that this nonfeasance was also in violation of Md. Rule 19-407(a).

frivolously a second motion to quash based on the same arguments he made in the prior motion. This appears to be the very essence of a frivolous claim against which Rule 19-303.1 attempts to safeguard. Bar Counsel had reason to pursue its investigation, as the withdrawals made from Milton's attorney trust account were labeled in such a way that raised legitimate questions that could be resolved only by a further investigation. Thus, without legal support for his claim that Bar Counsel did not have the authority to investigate further, both of Milton's motions to quash were frivolous.

Regarding Rule 19-308.1, the evidence supported amply the hearing judge's findings of fact establishing that Milton failed on numerous occasions to provide relevant documents requested by Bar Counsel as part of its investigation. Milton was aware of the requests, as well as his obligation under the MARPC to respond to them, but nevertheless failed to provide the proper documentation. His failure to provide all of the documents sought by its first request (before Bar Counsel knew of the Bank's error) was a violation of the Rule. This was compounded each time Milton failed thereafter to provide Bar Counsel with that which was requested.[6]

Finally, a violation of Rule 19-410 was found fairly because Milton made seven cash withdrawals from his attorney trust account. Milton's defense boils down to the notion that had Bar Counsel closed its file after learning of the erroneous overdraft

---

[6] The hearing judge determined that the repeated failure to provide the documents was also sufficient to establish a violation of Rule 19-308.4.

notice, the other violations would not have been found. We find this contention troubling in and of itself. The withdrawals were a clear violation of the MARPC.

We overrule this exception.

## 2. "Bar Counsel Violated Rule 16-731(d)" Defense.

### A. Summary

Milton's second exception states that Bar Counsel was in violation of Md. Rule 16-731(d)[7] "by keeping the Respondent in a constant state of being investigated." Claiming that this Rule places a limit on the time in which Bar Counsel may conduct an investigation, to "discourage Bar Counsel from sitting on a disciplinary case when there is other collateral litigation pending," Milton reasons that, because a previous investigation by Bar Counsel of him regarding other misconduct ended only a few weeks prior to the filing of charges in this matter, Bar Counsel was in violation of the Rule. As his argument continues, "[t]he fact that [it] did not file anything at all is exactly the kind of omission and silence that the M[A]RPC is meant to police." Further, he claims that, in regard to the earlier investigation "[Bar Counsel] was concealing the very evidence that the Respondent and his attorney were looking for and needed. This concealment was not only a fraud upon the Respondent but this Court as well."

---

[7] Without substantive change, Md. Rule 19-711, adopted in 2016, is derived from former Rule 16-731.

22

This exception boils down to the notion that Milton has been under investigation in one way or another for a number of years recently and the present prosecution is thus a violation of the Rule.

**B. Analysis**

We struggle, as did Judge Woodall, to find the connection Milton wishes to draw between the prior AGC proceedings against him and the present one. It is not disputed that Milton was under investigation by Bar Counsel for different misconduct prior to the initiation of the present case. There is little else, however, connecting the two investigations beyond this temporal proximity. The prior investigation by Bar Counsel, without going into too much detail, involved a distinct client interaction and resulted in Milton accepting a reprimand in June 2018, on the advice of his counsel.[8] Following his consent to the reprimand, Bar Counsel filed the disciplinary petition in this case. Milton stated at the evidentiary hearing before Judge Woodall in the present case that "I never would have consented to the reprimand if I thought that [Bar Counsel] were going to spring this case as soon as I did that." In the months following his consent, Milton requested on numerous occasions that the consent to the reprimand be rescinded, all of which were denied. At the hearing, Milton claimed the timing of filing of the present

_____

[8] As noted *infra*, Milton had been suspended for other misconduct earlier than this reprimand. *Attorney Grievance Comm'n v. Milton*, 430 Md. 2 (2013).

23

case was motivated by a desire to "trap" him, stating, "[i]f you had this disciplinary action, then the next one, well, that almost kind of creates three strikes."

On this record, we can conclude only that the timing of Bar Counsel's filing of the petition in this case was purely coincidental as it related to the conclusion of the prior reprimand case. Had Milton responded to any of Bar Counsel's early requests for information, this case would have either moved forward or been resolved likely months before the reprimand became final in the earlier case. Milton delayed completion of the investigation here by filing his frivolous motions to quash. Had Milton behaved as a lawyer under similar circumstances is supposed to in response to a legitimate Bar Counsel request for information, the timelines of these matters would not have overlapped as much as they did. Setting aside confirmation bias, it is not reasonable to interpret these events as other than coincidental.

Regarding Bar Counsel's asserted vindictive motives, Milton claims that, as part of the prior proceedings, Bar Counsel requested a similar documents subpoena, a request that was denied on 8 June 2017. According to Milton, this connects further the two cases and makes tangible his vision that the overdraft inquiry was merely a pretextual attempt to reverse the denial of the earlier subpoena. His vision is, however, an illusion. Bar Counsel's response upon advisement of the overdraft notice, received in July 2017, was not related to the prior request for a documents subpoena. The practice for Bar Counsel when it receives a notice of overdraft (as we understand it) is to request the types of information it did from Milton. *See Attorney Grievance Comm'n v. Mahone*, 451 Md.

24

25, 34 (2016). Milton is interpreting standard investigative procedure through subjective bias. Put in other words, the coincidental timing of events in the two cases has been personalized by Milton.

Milton argued further at the hearing before Judge Woodall that—because the prior investigation was a drain on his funds and time—the Bank's error "came because I'm literally working seven days a week, 12 hours a day to take care of my clients and pay for a legal team." "[I]t happened because the transactions I had went up exponentially because I had to pay for attorney's fees." If, as he claims, these are reasons for the Bank's error, they have no impact on the propriety of Bar Counsel's investigation and are irrelevant. Bar Counsel received a notification of an overdraft. It had a duty to inquire. Investigation of the discovered withdrawals from the attorney trust account was warranted.

We overrule this exception.

## 3. "The Cash Withdrawals were Actually Permissible Transfers of Money" Defense.

### A. Summary

This exception by Milton is divided into two distinct parts. First, Milton questions Bar Counsel's and the hearing judge's abilities to "identify a 'prohibited transaction' when they see one on a banking statement . . . [t]hat [is] how does this Court know or should trust that they have the skill to do so." Second, Milton claims that the "cash

withdrawals" referenced by the hearing judge in her findings of fact were mere transfers and thus permissible. This confusion, according to Milton, arises from the fact that "Capital One Bank along with Sun[T]rust and Bank of America do not have 'transfer tickets.[']" Thus, items labeled as withdrawals, identified as "cash withdrawals" by Bar Counsel and the hearing judge, were merely transfers. This claim arises, in part, as a result of Petitioner's Exhibit 20, which is, according to Milton, the only place cash withdrawals are identified as such. Petitioner's Exhibit 20 was a spreadsheet prepared by the Office of Bar Counsel identifying the suspect transactions in the attorney trust account during the period in question, including a number that were labeled as a "cash withdrawal." Milton pleads that this spreadsheet is not an official bank document and that there is no way to determine which withdrawals, labeled as "customer withdrawals" on bank records, were in fact cash withdrawals and which were transfers.

### B. Analysis

This exception is another mischaracterization of the record. Petitioner's Exhibit 4, the bank statements provided by Milton in partial response to Bar Counsel's initial request for information, provides a list of transactions regarding Milton's attorney trust account during a certain period. The transactions identified as cash withdrawals by Bar Counsel in Exhibit 20 were labeled as "Customer withdrawal" on the bank records. Impugning Milton's claim that transactions labeled as "customer withdrawals" were actually transfers, the bank statements identify a number of other transactions labeled as

"ACH Withdrawal E*TRADE TRNSFR," while others are labeled as "Wire transfer."

Md. Rule 19-410 states:

> An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer, and no cash withdrawal may be made from an automated teller machine or by any other method. All disbursements from an attorney trust account shall be made by check or electronic transfer.

Based on the record before her, it was not clearly erroneous that the hearing judge found that the "customer withdrawals" were cash withdrawals. Had Milton answered timely and put himself in a position to produce evidence and/or dispute Bar Counsel's factual allegations in the Petition at the evidentiary hearing, perhaps he could have adduced evidence that might have rebutted this claim. However, as the record stands, there is no such evidence and the judge was not clearly erroneous in her interpretation of the record.

This exception is overruled.

## 4. "The AGC's Affidavit is not Based Upon Personal Knowledge" Defense.

### A. Summary

Finally, Milton argues that the affidavit accompanying Petitioner's Exhibit 20 is not based on personal knowledge. "Bar Counsel is not free to create its own glossary for the Capital One Bank and the Respondent and offer its own self-serving explanation of the respondent['s] transactions." Further, Milton impugns Bar Counsel for making the allegation of impermissible transactions prior to the subpoena of the bank records and without asking him specifically for an explanation.

27

**B. Analysis**

There is no additional support offered by Milton to distinguish this exception from the previous one in regard to the cash/customer withdrawals. The only additional wrinkle here is his gravamen that Bar Counsel advanced its allegations against him prior to the subpoena of the bank records and without asking him for an explanation of the transfers. Neither of these arguments carry the day. The bank records provided by Milton in his initial response to Bar Counsel's inquiry were sufficient to establish that a probable violation of the MARPC occurred, regardless of the subsequent subpoena request. Milton's assertion that he was not contacted for an explanation is false. As part of the investigation of the withdrawals, Bar Counsel contacted Milton requesting further documentation expected to be maintained by a Maryland attorney, which might have shed further light on the activities regarding his attorney trust account.

As such, we overrule Milton's exceptions on the whole and hold that clear and convincing evidence supports the hearing judge's determination that Milton violated the above listed rules.

## THE APPROPRIATE SANCTION & AGGRAVATING AND MITIGATING FACTORS

Having overruled Milton's exceptions, we turn to identifying an appropriate sanction. In *Attorney Grievance Comm'n v. Shuler*, this Court stated that we

28

"sanction[] a lawyer not to punish the lawyer, but instead to protect the public and the public's confidence in the legal profession," and, by sanctioning, we not only deter other lawyers from engaging in similar misconduct, but also suspend or disbar those who are not fit to practice law. 443 Md. 494, 506 (2015). In determining the proper sanction to levy against an attorney, we may consider a number of mitigating or aggravating factors. *Attorney Grievance Comm'n v. Steinhorn*, 462 Md. 184, 202 (2018). The following aggravating factors may be considered in determining the proper sanction:

> (1) Prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the MLRPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

*Shuler*, 443 Md. at 506–07.

Judge Woodall concluded in her findings of fact and conclusions of law that there was clear and convincing evidence establishing three aggravating factors: a pattern of misconduct; multiple offenses; and bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency.

This Court has noted also a number of mitigating factors that may be considered in determining the proper sanction. These include:

(1) The absence of prior attorney discipline; (2) [the] absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify [the misconduct's] consequences []; (5) full and free disclosure to the Commission or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) physical disability; (9) a mental disability or chemical dependency including alcoholism or drug abuse where (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct and recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the MLRPC; and (14) unlikelihood of repetition of the misconduct.

*Shuler*, 443 Md. at 507.

The attorney under scrutiny must show, by a preponderance of the evidence, that one or more of the above mitigating factors apply for us to consider them in our determination. Md. Rule 19-727(c). Milton presented no evidence bearing on, and Judge Woodall did not find any, mitigating factors that might be folded into our analysis.

Turning to the appropriate sanction, Bar Counsel "recommends to the Court that the Respondent be indefinitely suspended from the practice of law." Milton offers no sanction recommendation, sticking instead to his guns that we set aside the findings and conclusions of law of the hearing judge and dismiss the petition of the AGC. For the following reasons, we agree with the sanction recommended by Bar Counsel and suspend indefinitely Respondent from the practice of law.

Although the sanction of an indefinite suspension is extreme (one of the strongest we may order against an attorney), we deem it necessary here as a result of Milton's constant and intentional violations of the Rules. Throughout the latter half of 2017 and the first few months of 2018, Respondent received at least nine requests to produce documents to aid Bar Counsel in its duty to investigate potential violations brought to its attention. Despite Milton's claims that the explanation of the overdraft notice sent to Bar Counsel by the Bank was sufficient, he failed to provide the whole of requested relevant documents. Upon receipt from Milton of bank statements that depicted the possibility of other violations, Bar Counsel continued to request documents that would allow it to determine whether a violation or violations had occurred. These requests were either ignored or denied outrightly by Milton. Throughout this process, Bar Counsel contacted Milton, providing him with extensions (both requested and not) so that he could provide the documents, and reminding him of his obligations under the MARPC.

This Court has imposed the sanction of an indefinite suspension for similar, but less egregious, violations by attorneys. In *Attorney Grievance Comm'n v. Rose*, we suspended indefinitely an attorney, with a right to seek reinstatement after six months, where the attorney failed to produce requested financial documentation to explain an overdraft of his attorney trust account. 383 Md. 385, 392 (2004). In *Rose*, Bar Counsel requested an explanation and documents on three occasions before receiving any response or explanation from the attorney. *Id.* at 389–90.

31

Respondent here not only failed to cooperate with the investigation, but went on the offensive (frivolously so) attempting to quash the investigation, without factual or legal support, and doing so apparently solely to obstruct the investigation.

Respondent has also violated the Rules before. In *Attorney Grievance Comm'n v. Milton*, we suspended Respondent indefinitely with a right to apply for reinstatement after 90 days for failing to represent clients competently and diligently, failing to communicate adequately with clients, and for failing to respond to requests of Bar Counsel during an investigation. 430 Md. 2 (2013). We have gone as far as to disbar attorneys for repeat violations of those Rules. *Attorney Grievance Comm'n v. Marcalus*, 442 Md. 197 (2015) (stating that an attorney's third disciplinary case was enough to "demonstrate[] that he is extremely likely to repeat his misconduct, no matter how many times this Court suspends him from the practice of law in Maryland").

Given Respondent's disciplinary history revealed in this case, we hold that the appropriate sanction is indefinite suspension from the practice of law in Maryland.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d) FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST GREGORY J. MILTON.**

32